270 A.2d 515.

KENNETH LAMONT *vs.* AETNA BRIDGE COMPANY.

NOVEMBER 13, 1970.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  This is a petition for specific compensation for either the complete loss of hearing in both ears or for a percentage loss of hearing.  The trial commissioner entered a decree which held that the employee had received a permanent and complete loss of hearing in both ears and ordered the payment of specific compensation. The employer took an appeal to the full commission.  The full commission, with one commissioner dissenting, upheld the employer's appeal.  A decree was entered denying and dismissing the petition without prejudice to the right of the employee to bring a new petition.  The employee has taken this appeal.  Sometimes hereafter we shall call employee by his last name.

The facts in the record are undisputed.  On September 27, 1968, Lamont was working on the Washington Bridge. A staging he was on gave way and employee fell some 40 feet into the water below.  Lamont was taken to Rhode Island Hospital where it was determined that he had·sus-

tained a perforated eardrum in the left ear. On February 4, 1969, employee filed this petition.

When the petition came on to be heard before the trial commissioner on April 7, 1969, the only person to testify was Dr. Mary D. Lekas, a qualified ear, nose and throat surgeon. She said that his fall resulted in damage to his inner ear, whereby employee sustained a permanent "bilateral neurosensory hearing loss." The use of a proper hearing aid, she declared, would bring employee's hearing up to a normal speech hearing range. The doctor went on to say that without such a device, employee could not hear normal conversations. In cross-examination the witness told employer's counsel that employee would hear "if you yell like I'll yell right now." However, she added that if there was a noisy background, Lamont could not hear the person yelling at him. In a more scientific vein, she fixed employee's loss of hearing at about 40 per cent in one ear and about 50 per cent in the other.

General Laws 1956, §28-33-19(1), as amended by P. L. 1967, chap. 161, sec. 1, provides specific compensation for the "complete loss of hearing" in one or both ears provided that loss is due to external trauma. Recently, we had the opportunity to define the term "complete loss of hearing" as these words are used in our Workmen's Compensation Act. *Pilkanis* v. *Leesona Corp.*, 101 R. I. 494, 224 A.2d 893. We determined there that the Legislature did not use these words in their literal sense or from the viewpoint of an otologist, who speaks of hearing loss in percentiles, but rather that the words were to be given their ordinary, normal and usual meaning. In other words, an employee who is seeking specific compensation does not have to show an absolute or total inability to hear the spoken word. The Legislature in enacting §28-33-19(1) was concerned with the ability of a man to function and fulfill a vital role in the workday world. Accordingly, in

*Pilkanis* we laid down the rule that a worker is entitled to specific compensation for a hearing loss, if he has shown that as a result of a work-related injury he has been denied those practical and useful benefits, which the ability to hear affords a man in his pursuit of one's usual and ordinary wants, needs and pleasures. We also pointed out in *Pilkanis* that if, after injury, the worker, even though his hearing may be impaired, still retains some degree of hearing, which enables him to pursue one's usual wants, needs and pleasures, he has not, for compensation purposes, sustained a complete loss of hearing.

The trial commissioner found that the testimony of Dr. Lekas had satisfied the test set forth in *Pilkanis*. He also rejected employer's contention that employee should be denied specific compensation because his hearing can be restored by the use of a hearing aid. This fact, the commissioner declared, was totally irrelevant.

A decree incorporating the commissioner's findings and awarding employee specific compensation was entered on June 4, 1969. Subsequent thereto employer took an appeal to the full commission. On October 29, a stipulation was filed whereby both parties agreed that Lamont's injuries were incurred when he fell into the water. It was also stipulated that employee was making no claim for any disability benefits. The full commission heard oral arguments and on December 11, 1969 its decision was filed.

The commission refused to give any credence to the stipulation filed by the parties. Its refusal was apparently based on the fact that the stipulation was filed after the trial commissioner's decree had been entered. The commission ruled that the record did not contain sufficient evidence that employee had sustained a compensable injury. The commission denied the petition without prejudice to the right of employee to file a new petition.

The commission's finding relative to a lack of evidence showing a nexus between employee's work and his injuries cannot stand. While employer in its brief and at oral arguments concedes that there was ample evidence upon which a finding of a compensable injury could be based,[1] we fault the commission's action for another reason. We have previously ruled that the commission may decide only those questions of law raised by the appeal before it. *Peloso v. Peloso, Inc.*, 107 R. I. 365, 267 A.2d 717; *Blanchette v. R. I. Pastry Co.*, 87 R. I. 329, 140 A.2d 703. Section 28-35-28 requires that the reasons of appeal filed with the commission specifically state all matters determined adversely to the appellant. Although employer's reasons of appeal list the usual grounds that the trial commissioner's decision and decree are against the law, the evidence and weight thereof, these general reasons of appeal did not bring into issue with the specificity required by the statute the compensability of employee's injuries. It is clear that the sole specific issue raised by employer in its appeal to the full commission is whether or not employee has suffered a "complete loss of hearing" and, if the loss was not complete, could he receive partial benefits. Since employer did not see fit to question the trial commissioner's determination that employee was injured while working for employer, the commission could not overturn this particular finding. Our reversal of the full commission, however, leaves unresolved the dispute between the litigants: has the employee suffered a loss of hearing which is compensable under the statute?

---

[1]Section 28-35-20 requires that the trial commissioner conduct a pretrial conference before a case proceeds to hearing. Both sides agreed at a pretrial conference held with the trial commissioner that Lamont had indeed suffered compensable injuries. The stipulation apparently embodies what had been agreed upon at the pretrial meeting. In addition, Dr. Lekas testified that the inner ear damage resulted from the impact caused when Lamont hit the water.

Before we consider if Lamont has shown a complete hearing loss, we shall discuss whether his use of a hearing aid bars him from receiving specific compensation and apart from such use, if his loss is partial, can he receive a weekly specific compensation benefit which is based on the percentage of his loss. Our reply to both these queries is in the negative.

The Legislature in enacting §28-33-19 and awarding an injured workman specific compensation has seen fit to give these benefits in a variety of circumstances. Benefits of differing amounts are granted for the loss of such bodily members as an arm, a hand, a leg or a foot. Loss of sight and loss of hearing are also within the beneficent provisions of this section. When the General Assembly dealt with the loss of eyesight, it provided for compensation where there has been an entire and irrevocable loss of sight or the reduction to one-tenth or less of normal vision *with glasses*. If one's vision is restored by the use of glasses beyond the one-tenth limitation described in the statute, an employee cannot receive any specific compensation. However, when the Legislature spoke of a loss of hearing, it made no mention of the reduction of such a loss by the use of a hearing aid. Since the Legislative arm of our government considered the use of an artificial device to relieve the impairment of one bodily function and *not* the other, we conclude that the Legislature intended that specific compensation be awarded a workman for the complete loss of his hearing even though the hearing can be restored with the aid of a hearing device.

Further, we believe that the statute under consideration provides specific compensation benefits solely for the complete loss of one's hearing. Any partial hearing loss is not compensable. Section 28-33-19(m) establishes a system of compensation for the partial uselessness of various bodily members and reads as follows:

"Where any bodily member or portion thereof has been rendered permanently stiff or useless, compensation in accordance with the above schedule shall be paid as if the member or portion thereof had been severed completely, provided, however, that if the stiffness or uselessness is less than the total, then compensation shall be paid for such period of weeks in proportion to the period applicable in the event that said member or portion thereof has been severed completely as the instant percentage of stiffness or uselessness bears to the total stiffness or total uselessness of such bodily members or portion thereof."

The employee's loss of hearing is a loss of a bodily function. It is clear from a study of subsection (m), particularly with its use of the word "severed", that the so-called partial specific benefits available in this portion of §28-33-19 refers to the partial loss of use of a bodily member. This section speaks of a loss by severance of hands, fingers, arms, legs and feet. Ears are not mentioned. It is quite apparent that specific compensation is to be given for the loss of use of the power or sense of hearing, rather than to an injury to the physical structure of the ear, and such benefits are to be paid only in a case where there has been a "complete loss of hearing."[2]

In denying the present petition, the commission remarked that the question presented herein was "novel and serious." Its denial without prejudice was based on our holding in *Carr* v. *General Insulated Wire Works, Inc.*, 97 R. I. 487, 199 A.2d 24, where we acknowledged that the commission could enter a nonprejudicial decree if such a step was the only vehicle available to prevent a manifest injus-

---

[2]Last year the Legislature enacted P. L. 1969, chap. 144. This legislation constitutes a substantial revision of §28-33-19. Specific compensation can now be awarded for a complete or partial loss of hearing due to prolonged exposure to industrial noise. The Legislature, however, did not change subsection (1). It still speaks only of a complete hearing loss caused by trauma.

tice. The commission's concern for employee's rights is most commendable. However, the Workmen's Compensation Act requires the commission, when considering an appeal to examine and weigh the evidence, to draw its own findings of fact and to decide whether the evidence preponderates in favor of a trial commissioner's decree. *Wardwell Braiding Machine Co.* v. *Imondi,* 107 R. I. 19, 264 A.2d 317. Although we have described the facts in this cause as being undisputed, we cannot invoke the well-established principle that where facts are uncontroverted, a question of law is presented which this court can determine. *Boullier* v. *Samsan Co.,* 100 R. I. 676, 219 A.2d 133; *Sullivan* v. *State,* 89 R. I. 119, 151 A.2d 360; *Corry* v. *Commissioned Officers' Mess (Open),* 78 R. I. 264, 81 A.2d 689. The commission in its decision specifically pointed to the fact that Lamont did not appear and testify before the trial commissioner. We are perplexed by this observation because, from the record before us, we cannot determine if the inference to be drawn from this remark is that due to employee's absence, the commission felt that the trial commissioner was "clearly wrong" in giving the weight he did to the surgeon's testimony, without personally observing employee and seeing for himself the extent of Lamont's affliction. See *Laganiere* v. *Bonte Spinning Co.,* 103 R. I. 191, 236 A.2d 256. Since there is a factual determination to be made by the commission, we must of necessity remand this case to that tribunal.

In remanding, we would point out that the test formulated in *Pilkanis* does not require a showing by an injured employee that he is completely deaf. Rather, he must satisfy the commission that, because of his impaired hearing, he cannot make his way in the work-a-day world. Lamont is a construction worker. His work-a-day world is not one of monastic solitude. It is noisy—doors slam, horns honk, motors roar, pneumatic hammers pound, the

noon whistle shrieks and engines throb. The daily cacophony of sound that assaults the ears of one on the job is almost limitless. If the commission, upon its consideration of this case, believes that Lamont cannot hear the "yelling," when there is noise in the background, he is entitled to the specific benefits listed in the statute.

The petitioner's appeal is sustained; the decree appealed from is vacated and the cause is remanded to the Workmen's Compensation Commission for further proceedings.

ROBERTS, C. J., did not participate.

*Coia and Coia, Raymond R. Coia,* for petitioner.

*Anderson and Kane, Vincent F. Kane,* for respondent.