William BLECHA

v.

WELLS FARGO GUARD–
COMPANY SERVICE.

No. 91–204–M.P.

Supreme Court of Rhode Island.

May 19, 1992.

Robert Thurston, Lauren Jones, Jones Associates, Anthony J. Cordeiro, Carrillo & Cordeiro, Providence, for plaintiff.

Harold E. Adams, Adams & Haydon, East Greenwich, for defendant.

OPINION

FAY, Chief Justice.

This is a petition for a writ of certiorari to review a final decree of the Workers' Compensation Commission (commission).[1] The final decree granted William Blecha (Blecha), an employee of Wells Fargo Guard–Company Service (Wells Fargo), compensation benefits after he suffered a myocardial infarction (heart attack) while at work. The petitioner, Wells Fargo, alleges error for the following reasons. First, it claims that the trial commissioner erroneously found that Blecha's heart attack was causally connected to his employment because he failed to consider the testimony of two witnesses regarding the existence of work-related stress in Blecha's position. Second, it contends that the trial commissioner's award of compensation benefits to Blecha for partial disability after November 17, 1988, was improper because of the inconsistency in the decision in which he expressly relied on the doctor's testimony and subsequently awarded benefits in contravention to that testimony. For these reasons, it alleges that the appellate division erred in affirming the trial commissioner's findings and in failing to address the inconsistency between the relied-upon doctor's opinion and the decree subsequently issued. We conclude that the trial commissioner's decision regarding causation was proper and supported by the evidence but find latent inconsistency between the trial commissioner's decision regarding subsequent disability and his decree, which inconsistency must be resolved by the factfinder. The relevant facts are as follows.

On September 3, 1985, Blecha suffered a heart attack while at work. Blecha was employed as an account representative supervising on-site personnel from a central office but not performing any manual or physical labor. Blecha testified that as an

1. Pursuant to P.L.1990, ch. 332, entitled "An Act Relating to Workers' Compensation," signed into law by then-Governor DiPrete in July 1990, the Workers' Compensation Commission is to be known as the Workers' Compensation Court, the commissioners are to be referred to as judges, and the appellate commission is to be known as the appellate division. Because this law was enacted after the hearing regarding benefits, we shall refer to the tribunal as the Workers' Compensation Commission and the trier of fact as a commissioner. However, because the appellate hearing was conducted after the statutory enactment, we shall refer to that tribunal as the appellate division.

account representative it was his responsibility to ensure that each account was protected by the presence of adequate security personnel, his responsibility to supervise twenty-two to thirty accounts, and his responsibility to supervise as few as one hundred or as many as one hundred and fifty employees. Blecha stated that he was promoted to this position in May 1985. The position entailed dealing with scheduling problems and maintaining shifts in a variety of areas.

Following his heart attack, Blecha underwent corrective surgery on September 16, 1985. On May 30, 1986, Blecha petitioned the commission for benefits for the heart damage and chest injuries he sustained on September 3, 1985. The commission was to determine whether the condition and the injuries arose out of and in the course of Blecha's employment and, if so, to make an award of corresponding disability payments.

During the hearings on May 11, 1987, and October 17, 1988, Wells Fargo presented testimony from two of Blecha's coworkers, James Terry (Terry) and Richard White (White), regarding the work conditions of an account representative. Terry was Blecha's supervisor, and White had held the same position as Blecha for over five years. Terry and White, testifying about their observations of Blecha's work before and on the day of his heart attack, stated that the position was a sit-down job and asserted that the responsibilities did not involve high-level stress. Blecha, however, testified that he personally considered the job to be stressful.

Blecha offered expert testimony from Dr. William Caplan, who testified that he examined Blecha on July 12, 1985, and diagnosed him as having coronary artery disease. He stated that this condition blocks circulation of coronary arteries, which leads to insufficient blood flow through the heart and causes ischemia or angina and can ultimately lead to a heart attack. Doctor Caplan opined that Blecha's heart attack was precipitated by his employment and that as of his most recent examination,

Blecha was totally disabled from this injury.

On rebuttal Wells Fargo offered expert testimony of Dr. Elliot L. Sagall. On November 16, 1988, Dr. Sagall examined Blecha and made a summary of findings after also reviewing Blecha's medical records. Doctor Sagall's written report explained that Blecha's heart attack was not causally work related and that in his opinion Blecha could return to his position as an account representative at Wells Fargo.

Doctor Sagall expressly stated:
"Based upon the present findings and Mr. Blecha's course to date, it is my opinion that his cardiac status, although precluding his performing work activities involving moderately strenuous to strenuous physical effort, is such that he could resume his previous work as an Account Representative or similar inside work on a full-time basis.

"In regard to the questions of causation that have arisen, it is my opinion that Mr. Blecha's underlying coronary atherosclerotic heart disease, the pathology responsible for the acute myocardial infarction of September 3, 1985, and his subsequent hospitalizations, cardiac surgery, and work disability, as outlined above, cannot be considered medically as being causally related to his employment at Wells Fargo or to any alleged emotional stress resulting from his promotion some two months prior to September 3, 1985, to the position of an Account Representative, but must be viewed as a natural disease process, presently of unknown cause or causes, to which he has been predisposed by reason of his male sex and age as well as the additional recognized background medical risk factors enumerated above.

"In regard to the acute myocardial infarction of September 3, 1985, it is my opinion, based upon the sequence of events described by Mr. Blecha preceding the syncopal episode which heralded that attack, that this pathology resulted solely from the expected, natural, and spontaneous progression of his underlying coronary disease, happening to occur

during the course of work activities as a coincidence of time only, but with no causal relationship to his work activities of that day or previously."

On December 29, 1989, after considering the evidence presented, the trial commissioner found that a causal relationship existed between Blecha's heart attack and his work activities. The commissioner stated:

"I found the petitioner to be a credible witness. I believe that the new job assignment, although tolerated by others without undue stress, was not tolerated by the petitioner. I am satisfied that both experts agree that stress may be the proverbial straw that breaks the camel's back. I am persuaded by the temporal aspect of the sequence of events here that the petitioner's anxiety in the new position precipitated in some measure the myocardial infarction. I accept, therefore, the opinions expressed by Dr. Caplan regarding causality."

The trial commissioner further specified that he agreed with Dr. Sagall regarding Blecha's recovery, stating, "I am satisfied, however, that the opinions expressed by Dr. Sagall regarding the petitioner's recovery is [sic] equally persuasive," thereby embracing the opinion that Blecha could resume his position as an account representative on a full-time basis. However, the trial commissioner specifically stated in his enumerated findings that "as a result thereof he was totally disabled from September 4, 1985 to November 16, 1988, and partially disabled from November 17, 1988," and thereby awarded benefits for Blecha's partial disability. These benefits are presently payable to Blecha.

On October 31, 1990, Wells Fargo appealed to the appellate division of the Workers' Compensation Court, and a hearing was conducted on April 4, 1991. Wells Fargo alleged that the trial commissioner clearly erred by overlooking or misconceiving material evidence, pointing out that he failed to mention the testimony of Terry or White in evaluating Blecha's working conditions on the issue of causation. Wells Fargo alleged further error, contending that there was inconsistency between the trial com-

missioner's decision and his decree. The trial commissioner expressly accepted Dr. Sagall's opinion that Blecha's condition and recovery allowed him to be able to resume his position as an account representative yet he simultaneously decreed that Blecha was partially disabled as of November 17, 1988, and ordered that Blecha's benefits be continued for partial disability from that date.

On review the appellate division found no error in the decision and decree of the trial commissioner and stated:

"The trial court was confronted with conflicting medical evidence as to both the cause and extent of the injury and incapacity, and also as to the alleged stressful working environment. He thereafter accepted the evidence that showed that the petitioner's ' * * * new job assignment, although tolerated by others without undue stress, was not tolerated by the petitioner * * * I am persuaded by the temporal aspect of the sequence of events here that the petitioner's anxiety in the new position precipitated in some measure the myocardial infarction.' He thereupon accepted the opinion evidence of Dr. William Caplan, the employee's treating cardiologist, as to the cause of the petitioner's incapacity, and that of Dr. Elliot Sagal [sic], the respondent's medical expert, that the incapacity ended as of November 16, 1988. He is free to do so. *Parenteau v. Zimmerman Engineering, Inc.*, 111 R.I. 68, 299 A.2d 168 (1973). The record contains an abundance of competent evidence to sustain the trial court's findings. There is no error."

Regarding Blecha's incapacity, the appellate division noted that the trial commissioner had the authority to choose to accept the opinion of Dr. Sagall. The appellate division, however, did not address the issue of inconsistency created in the trial commissioner's decree in continuing partial-disability payments as of November 17, 1988, after expressly relying on Dr. Sagall's opinion that the incapacity had ended as of November 16, 1988, and that Blectha could return to his job.

On April 29, 1991, Wells Fargo petitioned this court by a writ of certiorari to review the alleged inconsistencies and errors in the decision and decree of the trial commissioner that were subsequently affirmed on further review by the appellate division. The petition for writ of certiorari was granted on July 31, 1991. Wells Fargo contends that the appellate division erred (1) in sustaining the trial commissioner's decision regarding causation and work-related stress because he failed to review or mention the testimony of Terry and White and thereby overlooked this evidence and (2) by failing to vacate or amend the trial commissioner's order awarding Blecha partial-disability benefits, considering the inconsistency between the decree and the trial commissioner's purported acceptance of Dr. Sagall's opinion.

■ The commission determines whether competent evidence exists to support a finding that benefits should be awarded. The employee bears the burden of proving allegations contained in the petition for compensation by a fair preponderance of credible evidence. *Mastronardi v. Zayre Corp.*, 120 R.I. 859, 862–63, 391 A.2d 112, 115 (1978). The court's function in reviewing decisions of the appellate division is to determine whether there is legally competent evidence to support the findings of fact. *Gaines v. Senior Citizens Trans., Inc.*, 471 A.2d 1357, 1358–59 (R.I. 1984). When the findings of fact do not support the conclusion, this court cannot make such determinations because the fact-finding function is performed by the commission. In reviewing a decree of the commission, this court is to construe the decree in light of the commission's decision. *LeBrun v. Woonsocket Spinning Co.*, 106 R.I. 253, 257, 258 A.2d 562, 565 (1969). Findings of fact made by the commission, absent fraud and supported by competent evidence, are binding upon this court. *Worcester Textile v. McIntosh*, 593 A.2d 70, 72 (R.I.1991); *Perron v. ITT Wire and Cable Div.*, 103 R.I. 336, 340–41, 237 A.2d 555, 558 (1968). This court may then "sustain, modify or reverse the decree as circumstances may require." 103 R.I. at 341, 237 A.2d at 558. In reviewing the appel-

late division's findings of fact, this court is bound by those findings as long as they are supported by legally competent evidence. *Miller v. American Airlines, Inc.*, 582 A.2d 440, 441 (R.I.1990). It is not, however, the function of this court to review the appellate division's determinations of the credibility and the weight of testimony. *Mercantum Farm Corp. v. Dutra*, 572 A.2d 286, 288 (R.I.1990). We must therefore determine whether there was sufficient evidence to support the appellate division's decision that the trial commissioner made the correct determinations of causality and award of benefits for Blecha's continuing partial disability.

■ General Laws 1956 (1986 Reenactment) § 28–35–28 mandates that the appellate division shall "review the decree upon the record of the case and shall file a decision pursuant to the law and the fair preponderance of the evidence[,]" thereby "giving the [division] a de novo standard of review." *Davol, Inc. v. Aguiar*, 463 A.2d 170, 173 (R.I.1983). There must be a finding that the trial commissioner was clearly wrong or misconceived or overlooked material evidence before such a de novo review occurs. *Id.* at 174.

■ The first error alleged by Wells Fargo is that with respect to causation the appellate division erred in failing to reverse the decision and decree of the trial commissioner. Wells Fargo asserts that the trial commissioner "apparently overlooked the testimony of [Blecha's] co-workers, James Terry and Richard White," relating to Blecha's exposure to work-related stress, by failing to review or mention this testimony. This court has stated:

"It is well settled that where the testimony of two witnesses is conflicting and the trier of facts expressly accepts the testimony of one of the witnesses, he implicitly rejects that of the other. Moreover a trial justice may not be said to have overlooked testimony to which he did not refer if, by pointing to the conflicting testimony on which he relies, his rejection of the other is clearly indicated. *Flynn v. Pearce*, 106 R.I. 323, 259 A.2d

401 (1969); *DiMaio v. DelSesto*, 102 R.I. 116, 228 A.2d 861 (1967)." *Turgeon v. Davis*, 120 R.I. 586, 592, 388 A.2d 1172, 1175 (1978).

We conclude that in this case the trial commissioner did not err by failing to mention the testimony of the two witnesses. Rather, the trial commissioner considered that testimony but did not find it controlling or conclusive on the issue of causation. We conclude, therefore, that the appellate division properly affirmed the trial commissioner's decision and decree with respect to causation.

In heart attack cases the inquiry centers not on whether the work activity involved physical exertion but rather whether there existed a causal connection between the employee's work and the resulting heart attack. In *Gartner v. Jackson's, Inc.*, 95 R.I. 489, 495, 188 A.2d 85, 88 (1963), the trial commissioner had found that the work did not contribute to the heart attack suffered by the plaintiff-employee. In that case, after doctors had given conflicting testimony regarding causality, the trial commissioner accepted the testimony of one of the doctors in making his findings and issuing the decision. *Id.* at 495–96, 188 A.2d at 88. "Causal connection having been thus determined by the commission on conflicting evidence, the finding of fact on that issue is binding on this court." *Id.* at 496, 188 A.2d at 88–89. *See Varin v. Lymansville Co.*, 87 R.I. 463, 469, 143 A.2d 138, 141 (1958); *Russell v. Liberman*, 71 R.I. 448, 453, 46 A.2d 858, 860 (1946); *Enos v. Industrial Trust Co.*, 62 R.I. 263, 269–70, 4 A.2d 915, 918 (1939). Similarly, in the *Gaines* case the commission was presented with the conflicting testimony of two medical experts regarding the cause of the plaintiff's heart attack. *Gaines*, 471 A.2d at 1359. Because this court found that the trial commissioner's factual determination regarding the cause of the heart attack was premised upon competent evidence presented before the commission, the court stated that "[i]t is not within our province to assess the weight or credibility of expert testimony." *Id.*

Review of the full decision of the appellate division affirming the trial commission-er's findings and decision clearly demonstrates that the trial commissioner did not overlook the testimony of White and Terry. Instead, he relied on the specific and relevant testimony of Dr. Caplan in finding causality between Blecha's employment and his heart attack. The trial commissioner is uniquely qualified and able to determine on which expert opinion or witness he will rely in premising his decision. The trial commissioner is able to accept certain evidence and reject other evidence "because he is in the best position to observe the appearance of a witness, his or her demeanor, and the manner in which he or she answers questions." *Quintana v. Worcester Textile Co.*, 511 A.2d 294, 295 (R.I.1986). The trial commissioner's exercise of his factual discretion is binding unless those findings are unsupported by legally competent evidence. We conclude that the trial commissioner relied upon competent evidence that supported his finding of causation between Blecha's heart attack and his employment and corresponding job-related stress. Because we conclude that the trial commissioner's finding of causality was premised upon credible and competent evidence, we therefore find it conclusive and binding upon this court.

■ Wells Fargo next asserts that the appellate division erred in failing to remand the case to the trial commissioner relative to the award of benefits for partial incapacity commencing November 17, 1988. It contends that there was inconsistency between the trial commissioner's order and his express reliance on the expert testimony of Dr. Sagall. Wells Fargo states that the inconsistency exists between the trial commissioner's express reliance on Dr. Sagall's testimony that Blecha could resume his regular work as of November 17, 1988, and the trial commissioner's simultaneously issuing a decree in which he awards continuing benefits to Blecha for partial disability on that date. We conclude that there is a latent ambiguity between the reliance premised in the decision and the subsequent decree issued, a factual ambiguity that must be resolved by the trial commissioner in his capacity as factfinder.

**104**

In *C.D. Burnes Co. v. Guilbault*, 559 A.2d 637 (R.I.1989), this court noted that a claim asserting that an employee had improved from being totally disabled to being partially disabled "would require knowledge of the prior condition to gauge how much of an improvement the employee has experienced." *Id.* at 640. In the present case there is no such knowledge referred to or evidenced in the trial commissioner's decision that would provide a rationale for his decision and decree. Rather the trial commissioner expressly adopted Dr. Sagall's opinion of disability, which opinion stated that as of November 17, 1988, Blecha could return to his employment in the same capacity as before but should refrain from physical exertion. In his subsequent decree, however, the trial commissioner awarded Blecha continuing partial-disability benefits as of November 17, 1988. There is no evident explainable rationale for the ambiguity created between the decision and the subsequent decree.

█ On appeal we are "to examine and weigh the evidence, to draw [our] own findings of fact and to decide whether the evidence preponderates in favor of a trial commissioner's decree." *Lamont v. Aetna Bridge Co.*, 107 R.I. 686, 693, 270 A.2d 515, 519 (1970). When this court cannot ascertain the factual basis upon which a finding or a decree is premised, this determination is to be made by the trial commissioner, and such cases are to be remanded for specific findings of fact and supporting rationale. *Catoia v. Eastern Concrete Products Co.*, 84 R.I. 402, 406–07, 124 A.2d 864, 866–67 (1956). The decree must be logically derived from the findings of the trial commissioner. In the present case there is clear inconsistency between the decision and the decree of the trial commissioner and no apparent evidence supporting the inconsistent rationales. Accordingly, we conclude that although the appellate division correctly noted that the trial commissioner has the ability and the power to accept or reject an expert's opinion, it erred in affirming the trial commissioner's decision and decree because of the logical inconsistency that resulted. We therefore quash the decision of the appellate division affirming the trial commissioner's decision and decree with respect to the issue of Blecha's disability and subsequent award of continuing partial-disability payments and remand the case to the Workers' Compensation Court.

We therefore deny the petition for certiorari in part and grant it in part. We affirm the appellate division's affirmation of the trial commissioner's finding on causality and therefore quash the writ of certiorari in part with respect to this issue. We hereby grant certiorari on the issue of partial disability and quash that portion of the decree awarding continued benefits for the partial disability. We therefore remand the papers of this case to the Workers' Compensation Court for clarification in accordance with this opinion of the inconsistency between the trial commissioner's decision and his subsequent inconsistent decree.